UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | | |
|---|---|---|
| IN RE SUBPOENA TO CASSIDY HUTCHINSON | ) ) ) ) ) | Case No. 1:26-mc-26171-JTK |

**RESPONDENT'S OPPOSITION TO PETITIONER**
**CASSIDY HUTCHINSON'S MOTION TO QUASH SUBPOENA**

Respondent British Broadcasting Corporation (the "BBC"), by and through undersigned counsel, and pursuant to the Court's September 10, 2026, Order, respectfully opposes Petitioner Cassidy Hutchinson's Motion to Quash the BBC's deposition subpoena. Ms. Hutchinson's objections, while sincere, are unsupported by the record and do not account for the relevance and importance of her testimony to the points at issue in this case, and in light of the scope of discovery that the Court has authorized.

## BACKGROUND

Plaintiff President Donald J. Trump's central claim in the underlying lawsuit is that the BBC defamed him by including in a 2024 documentary a clip of the speech that he delivered at the White House Ellipse on January 6, 2021 (the "Speech"). *See Trump v. BBC*, No. 1:25-cv-25894 (S.D. Fla. Dec. 15, 2025) ("*Trump v. BBC*"). According to Plaintiff, the way in which that clip was edited conveyed the allegedly false implication that he "incit[ed]" or "fomented" the riot and assault on the U.S. Capitol that followed the Speech. Am. Compl. ¶¶ 54, 107, 125, 135(c) (*Trump v. BBC*, ECF 124). Because Plaintiff is a public official and the speech at issue relates to a matter of public concern, Plaintiff bears the burden of proving that this implication is false. *Phila. Newspapers v. Hepps*, 475 U.S. 767, 776 (1986). Moreover, because Plaintiff claims that the BBC defamed him by altering his own statements, he must prove that this "alteration results

in a material change in the meaning" of the statements that he delivered on January 6, 2021. *Masson v. New Yorker Mag. Inc.*, 501 U.S. 496, 517 (1991). In short, to prevail in the underlying litigation, Plaintiff must ***affirmatively prove*** that he did not foment or incite the January 6 Capitol riot.

As the Court has recognized in the underlying litigation, Plaintiff's burden to prove falsity has important implications for the scope of permissible discovery. It "entitle[s] [the BBC] to discover the contours of the message" in the Speech and whether it created the "impression" that Plaintiff "fomented violence." *See* Omnibus Order Following Discovery Hearing on J. Mots. for Discovery Hr'g at 9 (the "Omnibus Order") (*Trump v. BBC*, ECF 120). The scope of relevant discovery thus includes "Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech," specifically "whether that impression was given or received; if that impression was given or received, whether President Trump gave it intentionally or otherwise; the breadth of the audience of the message and impression; and the extent of any resulting injury or harm[.]" *Id.* at 9-11.

Only a finite pool of witnesses — primarily those in his inner circle — have the capacity to testify to Plaintiff's intentions that day. Ms. Hutchinson, as she has publicly made clear, is one of those people. Her deposition testimony would be both highly relevant and distinct from her previous public statements. As such, Ms. Hutchinson's Motion to Quash should be denied.

## PROCEDURAL HISTORY

On July 27, 2026, Respondent BBC served notice of a deposition subpoena to Petitioner Cassidy Hutchinson. The deposition was originally scheduled for August 13, 2026, but was continued by agreement of counsel to allow for this motion practice. On August 20, Petitioner's counsel filed a Motion to Quash in the U.S. District Court for the District of Columbia. *In re*

*Subpoena to Cassidy Hutchinson*, No. 1:26-mc-120 (D.D.C. Aug. 20, 2026). On August 28, the court in that matter, upon Petitioner's consent, transferred the matter to the U.S. District Court for the Southern District of Florida given the pending underlying litigation in this District. Under the Local Rules of both courts, Respondent's deadline to file an opposition to Petitioner's Motion fell on September 3, 2026. (D.D.C. L.R. 7(b); S.D. Fla. L.R. 7.1(c)(1)). Thus, out of an abundance of caution, Respondent filed its opposition on the underlying docket. (*Trump v. BBC*, ECF 145). On September 8, 2026, this miscellaneous matter was opened. On September 10, this Court directed Respondent to "file a memorandum in support of the subpoena in the [designated] miscellaneous case." (*Trump v. BBC*, ECF 166). This re-filed Opposition follows.

**ARGUMENT**

As the Court in the underlying litigation has noted, "the scope of discovery is broad, allowing each party to 'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .'" Omnibus Order at 11 (quoting Fed. R. Civ. P. 26(b)(1)); *see also Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1546-47 (11th Cir. 1985) (the Federal Rules "strongly favor full discovery whenever possible") (citations omitted). In this vein, "[t]he party resisting discovery has [the] heavy burden of showing why the requested discovery should not be permitted." *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) (collecting cases); *see also Tomei v. Wm. Wrigley Jr. Co.*, 2011 WL 13228571, at *2 (S.D. Fla. Dec. 19, 2011) ("[T]he movant, even a non-party, has the burden of proof to demonstrate that compliance with the subpoena would be unreasonable and oppressive."). Ms. Hutchinson's arguments fail to carry this heavy burden.

**I. Ms. Hutchinson's Testimony Is Highly Relevant to the Core Issue in This Case.**

"Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the subject matter of the action." *Dunkin'*

*Donuts, Inc. v. Mary's Donuts, Inc.*, 2001 WL 34079319, at *2 (S.D. Fla. Nov. 1, 2001); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (holding relevance should be "construed broadly").[1] "Indeed, even when questions which are not relevant are asked at a deposition, absent bad faith or unreasonable behavior by the examiner, the proper procedure is for the deponent to answer the question, and the burden of demonstrating the lack of relevancy is on the person making the objection." *Grayson v. No Labels, Inc.*, 2021 WL 8199902, at *7 (M.D. Fla. Dec. 29, 2021), *aff'd*, 2022 WL 1222577 (M.D. Fla. Feb. 17, 2022).

Ms. Hutchinson alleges that she has no relevant testimony to offer because she "does not have any personal or direct knowledge regarding the contours of the Speech," as was "established under oath before the Select Committee," *see* Mot. to Quash at 9, but the public record shows otherwise. Ms. Hutchinson's testimony in front of the House Select Committee to Investigate the January 6th Attack on the U.S. Capitol (the "Committee") reveals her insights into the Speech, including other White House officials' input on it.[2] In her public testimony in front of the Committee on June 28, 2022, for example, Ms. Hutchinson spoke about Plaintiff's advisors seeking to tone down the violent rhetoric of the speech:

> LIZ CHENEY: Were you aware of concerns that White House counsel Pat Cipollone or Eric Herschmann had about the language President Trump used in his ellipse speech?

---

[1] "While Rule 45 does not specifically identify irrelevance as a reason to quash a subpoena, it is generally accepted that the scope of discovery allowed under Rule 45 is limited by the relevancy requirement of the federal discovery rules." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020).

[2] Ms. Hutchinson cites *Smartmatic USA Corp. v. My Pillow Inc.*, 2024 WL 4650935, at *5 (D.D.C. Aug. 22, 2024), *R. & R. adopted*, 2024 WL 4606153 (D.D.C. Sept. 10, 2024), for the proposition that a deponent's testimony is irrelevant if they "had no knowledge 'regarding the allegedly defamatory statements at issue.'" Mot. to Quash at 9. That is not the case here. Moreover, *Smartmatic* is distinguishable because the deponent there was several degrees — and nearly 20 years — removed from the statements at issue. *Smartmatic*, 2024 WL 4650935, at *5. Ms. Hutchinson, conversely, was a first-hand witness to the drafting and delivery of the Speech.

> CASSIDY HUTCHINSON: There were many discussions the morning of the [6th] about the rhetoric of the speech that day. In my conversations with Mr. Herschmann, he had relayed that we would be foolish to include language that had been included at the President's request, which had lines along — to the effect of fight for Trump. We're going to march the Capitol. I'll be there with you. Fight for me. Fight for what we're doing. Fight for the movement. Things about the Vice President at the time too. Both Mr. Herschmann and White House counsel's office were urging the speechwriters to not include that language for legal concerns, and also for the optics of what it could portray the president wanting to do that day.[3]

Similarly, in her first interview with the Committee, Ms. Hutchinson was asked about a meeting on Air Force One days before January 6th, where staff and congressional members were discussing the Speech. She described that Plaintiff "was very big on running things through people to kind of get their insight on the phrasing of his words to make sure it was how he would like to say it and how he thinks it would be best received by people so it was very clear." H.R. 117-663, at 25:20-26:1 (Feb. 23, 2022) (H. Select Comm. to Investigate the Jan. 6th Attack on the U.S. Capitol, Transcribed Interview of Cassidy Hutchinson) ("Hutchinson Tr.").[4]

Later in that congressional interview, Ms. Hutchinson directly spoke to Plaintiff's intent in delivering the Speech — a significant issue in this proceeding and an issue that the Court has expressly identified as within the scope of relevant permissible discovery.

> Q: If you could tell, what was the President's primary objective with the speech on January 6th?
>
> A: To relay the message that he had been relaying the last several weeks. […]

---

[3] *Here's Every Word from the Sixth Jan. 6 Committee Hearing on Its Investigation*, NPR (June 28, 2022), https://www.npr.org/2022/06/28/1108396692/jan-6-committee-hearing-transcript (cleaned up).

[4] *Available at* https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000050113/pdf/GPO-J6-TRANSCRIPT-CTRL0000050113.pdf.

> Q: And when you say the message that he had been conveying for the past couple of weeks, are you talking about the stolen election messaging?
>
> A: [The] [m]essage that we weren't sure if we should trust the results of the election.

*Id.* at 26:15–27:2; *see also* Omnibus Order at 11 ("Defendant is entitled to discover Plaintiff's intention behind the speech and anything that bears on the impression his audience could have reasonably obtained in listening to the speech."). Ms. Hutchinson's testimony that day also touched on the mindset of the Plaintiff and his closest advisors on whether to encourage protestors to march to the U.S. Capitol on January 6th.

> Q: Can you get a little bit more specific about what that conversation was, what Mr. Giuliani said, what Mr. Meadows said about that issue, whether to encourage people to march to the Capitol on January the 6th?
>
> A: In that specific instance, Mr. Giuliani had met with Mr. Meadows that night. Mr. Meadows said something along the lines of, should we put – should we start putting some tweets out to encourage people to go up to the Capitol, what do you think about this, Rudy, like, the boss wants to do this. Rudy had said something along the lines of, yes, that would be great. And Mr. Meadows – again, not verbatim, but something along the lines of, all right, we'll make it happen.

*See* Hutchinson Tr. at 34:2–10. Yet, Ms. Hutchinson's testimony in this first interview with the Committee was, by her own account, stifled by the White House-appointed lawyer who advised and represented her that day. In other words, Ms. Hutchinson's available public testimony makes clear that (1) she has express knowledge of the drafting, intent, and delivery of the Speech, and (2) her testimony on that issue was given in a context where she felt that she could not speak with complete candor.

## II. Ms. Hutchinson's Testimony Would Not Be Duplicative.

Though excerpts of Ms. Hutchinson's past testimony make clear her relevance as a witness, they do not substitute for a deposition in this matter. Ms. Hutchinson asserts that "the subpoena should [] be quashed as unduly burdensome under Rule 45" because "the requested

testimony [] is 'unreasonably cumulative or duplicative'" of her past testimony in front of the Committee. Mot. to Quash at 6 (quoting *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16, 18 (D.D.C. 2013)). This framing oversimplifies the Rule 45 "undue burden" analysis. To determine whether a subpoena imposes an undue burden, courts consider the relevance of the information; the requesting party's need for the information; the breadth, time period, and particularity of the request; the burden imposed; and the subject's status as a non-party. *Plouffe v. GEICO Gen. Ins. Co.*, 2017 WL 7796323, at *1-2 (S.D. Fla. Aug. 8, 2017) (quoting *Wiwa v. Royal Dutch Petrol. Co.*, 392 F.3d 812, 818 (5th Cir. 2004)). "Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." *John v. Keller Williams Realty, Inc.*, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19, 2019); *accord Convertino v. DOJ*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (holding the court "only entertains an unduly burdensome objection" when the objector "submit[s] affidavits or offer[s] evidence which reveals the nature of the burden").

A complete Rule 45 analysis thus requires "a case-specific balancing test." *Cytodyne Techs., Inc. v. Biogenic Techs.*, Inc., 216 F.R.D. 533, 535 (M.D. Fla. 2003). Here, the Court must consider the significant relevance of Ms. Hutchinson's testimony as one of a limited number of witnesses to the relevant events, and the narrow scope of testimony requested from her, specific to her observations on and around January 6th and the Speech in particular.[5]

[5] Indeed, courts in this district and elsewhere have found that deposition testimony is the ***less*** burdensome mechanism for discovery. *See Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 303 F.R.D. 673, 677 (S.D. Fla. 2014) ("[T]he Court is not inclined to tie Defendant's hands and prevent it from seeking relevant documents pursuant to its lawfully issued subpoenas merely because the option of taking depositions is also available to Defendant."), *aff'd*, 2015 WL 11921411 (S.D. Fla. July 6, 2015); *see also Halperin v. Kissinger*, 401 F. Supp. 272, 275 (D.D.C. 1975) (allowing deposition of former president because "[t]he medium of spoken questions and answers is certainly less onerous for defendant than lengthy interrogatories" and "an oral deposition is [thus] the least intrusive means of questioning the defendant").

On the other side of this balancing test, the argument that Ms. Hutchinson's testimony would be duplicative of her congressional interviews is incorrect for three reasons.

**First**, Ms. Hutchinson's prior testimony and public statements cannot replace her deposition testimony in this proceeding because the BBC has not had the opportunity to examine Ms. Hutchinson and probe her recollection as relevant to the claims against it. While Ms. Hutchinson's testimony to the Committee was undeniably extensive, the Committee's focus was distinct from the BBC's here, which is circumscribed by the scope of permissible discovery outlined by the Court. In other words, the areas of focus relevant and probative to the claims here are not necessarily those explored most thoroughly by the Committee. Because the interests of the BBC and the Committee are not identical, Ms. Hutchinson's congressional testimony is insufficient for the BBC's discovery needs in this case.

**Second,** Ms. Hutchinson herself has acknowledged that, in her first three interviews with the Committee, she was counseled to omit information by her lawyer, who was hired and paid for by Plaintiff's allies. "Before retaining my new lawyers, at times I had told less than the whole truth to a congressional committee charged with investigating a matter of the highest national importance, a matter that posed a threat to America's future greatness," Ms. Hutchinson wrote in her 2023 book. "I had withheld information about events that I had witnessed or that had been recounted to me by witnesses."[6] Thus, while Ms. Hutchinson emphasizes her "more than 30 hours of on-the-record testimony," Mot. to Quash at 11, that argument is undercut by her own admission that she was less than forthcoming for many of those hours. Indeed, in asserting that "the limited scope of [her] knowledge [about Plaintiff's Speech] was established under oath before the Select Committee," Ms. Hutchinson primarily cites material from her first interview,

[6] Cassidy Hutchinson, *Enough* at xvi (Simon & Schuster 2023) ("*Enough*").

where she admittedly "told less than the whole truth." *See id.* at 9-10 (asserting Ms. Hutchinson "admitted to not having an understanding of President Trump's mental state and intentions" and citing to her February 23, 2022 interview with the Committee).

**Third**, Ms. Hutchinson's subsequent statements imply that she has more knowledge about the drafting and editing of the Speech than was fully explored in testimony with the Committee. Passages from her memoir, published a year after her testimony to the Committee, reveal Ms. Hutchinson's proximity to the drafting and editing of the Speech — access that would allow her unique insight into the intentions and objectives behind it, a core issue in this case. In one anecdote from the morning of January 6th, she admits exactly that:

> I make a last-minute decision to ride in the staff van to the rally, hoping to catch bits of information from chatty colleagues who had just been in the Oval Office with the president. I tap my middle finger against my thumb, a nervous habit, as the motorcade slowly makes its way to the Ellipse. Stephen Miller scratches edits to the speech. Eric Herschmann mumbles something about the vice president.

*Enough* at 207. The same morning, she acknowledged to a White House colleague that she had "seen the email chain with speech edits[.]" *Id.* at 207. Ms. Hutchinson's commentary on the Speech, post-dating her congressional testimony, reveals the limitations of that testimony, and the necessity for the BBC to pursue its own lines of questioning.

## III. Ms. Hutchinson Has Not Shown Good Cause to Quash the Subpoena.

Ms. Hutchinson further seeks a protective order under Rule 26(c) to quash this subpoena, but "[p]rotective orders prohibiting depositions [] are rarely granted." *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 642 (S.D. Fla. 2007). Indeed, "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an

order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979).[7] For one, Rule 26(c) allows the issuance of a protective order only upon a showing of good cause. *In re Lakeview Loan Serv. Data Breach Litig.*, 2025 WL 1435739, at *2 (S.D. Fla. Mar. 27, 2025) (quoting *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91 (11th Cir. 1989)). For another, to satisfy this standard "the movant has the burden of showing the injury 'with specificity.'" *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696 (S.D. Fla. 2008) (quoting *Pearson v. Miller,* 211 F.3d 57, 72 (3d Cir. 2000)). Thus, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.*

Ms. Hutchinson seeks a protective order on the basis that additional testimony "would subject her to annoyance, embarrassment, and oppression," making her "the target of political harassment by the President and his followers, calls for prosecution, and criminal scrutiny under the current administration." Mot. to Quash at 11. However sincere Ms. Hutchinson's concerns, her request for privacy here is difficult to square with her extensive publicity efforts. Ms. Hutchinson's book debuted as a best-seller in 2023, and her numerous public events included an appearance on *Jimmy Kimmel Live!*.[8] Given her current public profile, Ms. Hutchinson has not shown that *this* additional deposition would materially change her level of exposure. *See, e.g.*, *Sterling v. Doe*, 2022 WL 2112091, at *5 (M.D. Fla. Feb. 2, 2022) (denying motion for

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

[8] *Cassidy Hutchinson's Political Memoir 'Enough' Debuts at Top of Charts*, Variety (Sept. 28, 2023), https://www.yahoo.com/entertainment/cassidy-hutchinson-political-memoir-enough-145420596.html; Jimmy Kimmel Live!, *Ex Trump Aide Cassidy Hutchinson on His Fear of Being Poisoned, Throwing Ketchup & Gaetz vs McCarthy* (Oct. 5, 2023), *available at* https://www.youtube.com/watch?v=X6mxc54HHYM.

protective order to maintain anonymity where party did not put forth evidence "to substantiate a likelihood that Plaintiff will abuse this identifying information"). Because Ms. Hutchinson has therefore not provided evidence to substantiate the allegation that her deposition in this proceeding would directly expose her to "annoyance" or harassment, she has not articulated the type of "extraordinary circumstance[]" under which a protective order is warranted.

**CONCLUSION**

For the foregoing reasons, the Court should deny Petitioner Cassidy Hutchinson's Motion to Quash Respondent's Subpoena.

Dated: September 14, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**
1909 K Street, NW
Washington, DC 20006-1157
Tel: (202) 661-2218
Fax: (202) 661-2299

By: */s/ Charles D. Tobin*
Charles D. Tobin
Fla. Bar No.: 816345
Maxwell S. Mishkin (*pro hac vice*)
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

*Attorneys for Respondent*

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket on September 14, 2026, which served the same electronically upon all counsel of record.

*/s/ Charles D. Tobin*
Charles D. Tobin